```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
--------------------------------------

GIANNIS ANTETOKOUNMPO,

                Plaintiff,

     - against -

PALEO PRODUCTIONS LLC and NICK MASSIE,

                Defendants.

20-cv-6224 (JGK)

MEMORANDUM OPINION AND ORDER

--------------------------------------

JOHN G. KOELTL, District Judge:

    The plaintiff, Giannis Antetokounmpo, brought this trademark infringement and dilution suit against the defendants, Paleo Productions LLC ("Paleo") and Nick Massie, seeking injunctive relief and damages. Following the Clerk's issuance of certificates of default against the defendants and this Court's determination that the plaintiff was entitled to a default judgment, the Court referred the case to Magistrate Judge Lehrburger for an inquest on the proper judgment to be entered. After receiving submissions from the plaintiff, the Magistrate Judge issued a Report and Recommendation ("Report"), ECF No. 49, recommending that this Court (1) award the plaintiff recovery of his attorney's fees and costs in the amount of $10,361.90, and (2) issue a permanent injunction enjoining the defendants from selling, offering for sale, advertising, or marketing products bearing the mark "GREEK FREAK" or any mark that is confusingly similar to that mark, including but not limited to "GREEK

1

FR34K." The Magistrate Judge further recommended that the Court deny the plaintiff's request for statutory damages under the Lanham Act. The plaintiff timely objected to the Report on the ground that he is entitled to statutory damages. For the reasons explained below, the plaintiff's objections are **overruled.**

## I.

Antetokounmpo, born in Greece and now a resident of Chicago, Illinois, is a well-known professional basketball player. Compl. ¶ 16. He currently plays for the Milwaukee Bucks in the National Basketball Association ("NBA"). Compl. ¶ 17. Antetokounmpo has been known by the nickname "Greek Freak" for several years. Compl. ¶ 20. He owns a federal trademark registration for the GREEK FREAK mark, and he has applied to register a variation of that mark, GREEK FR34K, which includes the numbers appearing on his NBA jersey. Compl. ¶ 24.

The GREEK FREAK registration covers backpacks and athletic apparel. Compl. ¶ 25. Antetokounmpo actually uses this mark on or in connection with various goods sold in interstate commerce, including tee-shirts, sweatshirts, hats, and backpacks. Suppl. Melekou Decl., ECF No. 48 ¶ 2, Ex. 1. In addition, Antetokounmpo endorses GFG, a purveyor of Greek cuisine, and GFG's "776" brand of food products. Id. ¶ 14. The 776 products, which are inspired by Mediterranean cuisine, include olive oil, honey, condiments, feta cheese, and spices. Id.

Paleo, which does business as The Paleo Grind and Ice Age Meals, is a Nevada corporation located in Nevada. Compl. ¶ 15-2.[1] Massie is a citizen of Nevada and the CEO of Paleo. Compl. ¶ 16-2; Melekou Decl., ECF No. 36 ¶ 7. The defendants operate multiple websites through which they market and sell, among other products, spice blends under the name "PALEO GRIND." Compl. ¶ 30, Ex. D. One of the defendants' PALEO GRIND spice blends is called "GREEK FREAK." Compl. Ex. D.

Antetokounmpo alleges that the defendants have infringed upon his trademark by advertising and selling their GREEK FREAK spice blend on various websites. Compl. ¶ 30. Antetokounmpo further alleges that the defendants' use of the GREEK FREAK mark postdates Antetokounmpo's first use of the mark, and that the defendants used the mark with constructive notice of Antetokounmpo's federal trademark rights. Compl. ¶¶ 31-32. Antetokounmpo never authorized the defendants to use the GREEK FREAK mark. Compl. ¶ 33. In fact, Antetokounmpo sent a Cease and Desist letter to the defendants on March 27, 2020, alerting the defendants of his exclusive rights in the mark and requesting an accounting of all profits generated from sales of merchandise using the mark. Compl. ¶ 34. The defendants did not cease their allegedly infringing activity or provide such an accounting. Id.

---

[1] The Complaint contains two paragraphs 15 and 16. The second paragraph 15 is referred to as 15-2, and the second paragraph 16 is referred to as 16-2.

Neither defendant appeared in this action, and this Court entered Orders entitling the plaintiff to a default judgment against Paleo and Massie on October 27, 2020, and February 12, 2021, respectively. This Court referred the case to Magistrate Judge Lehrburger for an inquest on February 12, 2021, to determine the appropriate judgment. Magistrate Judge Lehrburger issued the Report on June 17, 2021, concluding that the defendants are liable for trademark infringement, and recommending that this Court (1) award attorney's fees and costs to the plaintiff in the amount of $10,361.90, and (2) issue a permanent injunction enjoining the defendants from selling, offering for sale, advertising, or marketing products bearing the GREEK FREAK mark or any confusingly similar mark. However, the Magistrate Judge also recommended that the Court reject the plaintiff's claim for statutory damages under the Lanham Act. The plaintiff timely objected to the Report.

## II.

When reviewing objections to a magistrate judge's Report and Recommendation, the district court must "make a de novo determination of those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Fed. R. Civ. P. 72(b)(3). "[I]t is sufficient that the court 'arrive at

4

its own independent conclusion' regarding those portions of the report to which objections are made," and the court "need not conduct a de novo hearing on the matter." In re Hulley Enters. Ltd., 400 F. Supp. 3d 62, 69 (S.D.N.Y. 2019) (quoting Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985)).[2]

When conducting an inquest on damages following the entry of a default, "[a] court should take any necessary steps to establish damages with reasonable certainty." Herrara v. 12 Water St. Gourmet Cafe, Ltd., No. 13-cv-4370, 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016), report and recommendation adopted, 2016 WL 1268266 (S.D.N.Y. Mar. 31, 2016); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997).

"To accept those portions of the report to which no timely objection has been made, . . . a district court need only satisfy itself that there is no clear error on the face of the record." Herrara, 2016 WL 1268266, at *1. In this case, the plaintiff objects only to the conclusion that he is not entitled to statutory damages. The defendants have not objected to the Report. In any event, it is clear that the conclusions in the Report are well-reasoned with respect to: (1) the defendants' liability for trademark infringement; (2) the award of

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

attorney's fees and costs; and (3) the issuance of a permanent injunction. Accordingly, the Court adopts those conclusions of the Report at the outset and analyzes only the issue of statutory damages.

### III.

Under the Lanham Act, 15 U.S.C. § 1051 et seq., statutory damages are only available "[i]n a case involving the use of a counterfeit mark." Id. § 1117(c). Section 1117(c) expressly incorporates the definition of "counterfeit mark" from § 1116(d), which defines a counterfeit mark as "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." Id. § 1116(d)(1)(B)(i). A "counterfeit," in turn, is defined as a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark." Id. § 1127; see Tiffany and Co. v. Costco Wholesale Corp., 971 F.3d 74, 95 (2d Cir. 2020); Fujifilm N. Am. Corp. v. PLR IP Holdings, LLC, No. 17-cv-8796, 2019 WL 274967, at *3 (S.D.N.Y. Jan. 7, 2019). "Although 'spurious' is not a statutorily defined term under the Lanham Act, courts in this Circuit have defined it as 'deceptively suggesting an erroneous origin; fake.'" Id. (quoting Excelled Sheepskin & Leather Coat

Corp. v. Oregon Brewing Co., No. 12-cv-1416, 2015 WL 4468083, at *3 (S.D.N.Y. July 8, 2015)).

A counterfeit mark must "copy[] the registered mark to the point of indistinction," and also "must be used to 'pass off' the infringer's product as the original, rather than merely presented in a manner likely to confuse some consumers as to the origin or sponsorship of the infringer's product. In other words, 'the essence of counterfeiting is that the use of the infringing mark seeks to trick the consumer into believing he or she is getting the genuine article, rather than a colorable imitation.'" Id. (quoting Audemars Piguet Holding S.A. v. Swiss Watch Int'l, Inc., No. 12-cv-5423, 2015 WL 150756, at *2 (S.D.N.Y. Jan. 12, 2015)). Rather than comparing the plaintiff's mark and the defendants' allegedly counterfeit mark in the abstract, the court "considers how the marks appear to consumers in the marketplace." Id. at *4 (quoting GTFM, Inc. v. Solid Clothing Inc., No. 01-cv-2629, 2002 WL 1933729, at *2 (S.D.N.Y. Aug. 21, 2002)).

In this case, it is not plausible that a reasonable consumer would think that the defendants' GREEK FREAK spice blend was actually one of the plaintiff's products. The plaintiff does not use his GREEK FREAK mark in connection with spices, and he does not license his mark for such use. Indeed, the plaintiff has not shown that he uses his GREEK FREAK mark in

7

connection with any food products. Thus there is no "original" product of the plaintiff's for the defendants to imitate: a reasonable consumer would not be tricked into thinking he or she is buying a genuine GREEK FREAK spice blend because there is no such thing.

The plaintiff disputes this point, citing his promotion and sponsorship of GFG's 776 brand of food products, which include spices. But, as the Magistrate Judge correctly concluded, "trademark use will be deemed a counterfeit only if used on the same goods or services for which the trademark is registered," Report at 16. See 15 U.S.C. § 1116(d)(1)(B)(i) (emphasis added) (A "counterfeit mark" is "a counterfeit of a mark that is registered on the principal register . . . for such goods or services sold, offered for sale, or distributed and that is in use[.]"); Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 946 (9th Cir. 2011) ("Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." (citing State of Idaho Potato Comm'n v. G & T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005))); Ford Motor Co. v. O.E. Wheel Distribs., LLC, 868 F. Supp. 2d 1350, 1371 (M.D. Fla. 2012) ("The definition of 'counterfeit' reaches only cases in which the counterfeit mark

8

is used in connection with the same goods and services as those for which the mark is registered on the Principal Register and is in use."); Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12078-79 (daily ed. Oct. 10, 1984) ("[B]ecause this act is intended to reach only the most egregious forms of trademark infringement, it does not affect cases in which the defendant uses a registered mark in connection with goods or services for which the mark is not registered."); 4 McCarthy on Trademarks and Unfair Competition § 25:15 & n.7 (5th ed. 2021). The plaintiff's mark is registered for backpacks and athletic attire. The plaintiff's mark is not registered in Class 30 (which includes seasonings and spices)[3] or any class relating to food or food flavoring. Accordingly, the defendants' use of the GREEK FREAK mark cannot be counterfeiting within the meaning of 15 U.S.C. § 1117(c).

The plaintiff advances the general principle that "[c]lassification schedules shall not limit or extend the applicant's rights[.]" 37 C.F.R. § 2.85(f); see also Jean Patou, Inc. v. Theon, Inc., 9 F.3d 971, 975 (Fed. Cir. 1993) ("Trademark ownership results only from use, not from registration. Classification is to facilitate searching for registered marks[.]"). But that principle is inapplicable here because, as several courts have recognized, Congress chose to

---

[3] See Trademark Manual of Examining Procedure § 1401.02(a) (July 2021), https://tmep.uspto.gov/RDMS/TMEP/current#/current/TMEP-1400d1e1.html.

use limiting language in the specific statutory provision at issue—namely, § 1116(d)'s definition of "counterfeit mark." This definition—though somewhat less artful than its criminal counterpart[4]—communicates clearly that a counterfeit mark must be used on the same goods for which the authentic mark is registered; it is not enough that the authentic mark is registered and in use generally. This limitation is consistent with the principle that counterfeiting is "'the hard core or first degree of' intellectual property offenses." Fujifilm, 2019 WL 274967, at *3 (quoting Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 242 (S.D.N.Y. 2012)); see also Tiffany and Co., 971 F.3d at 95 ("[C]ounterfeiting is merely an aggravated form of infringement[.]").

Finally, the defendants do not appear to have used the term GREEK FREAK as a "mark" at all. See 15 U.S.C. § 1127 (emphasis added) (defining "trademark" as "any word, name, symbol, or device, or any combination thereof" used to "identify and distinguish . . . goods, including a unique product, from those manufactured or sold by others and to indicate the source of the

---

[4] 18 U.S.C. § 2320(f)(1)(A)(iii) (A "counterfeit mark" must be "used in connection with the goods or services for which the mark is registered[.]"). While these two definitions of "counterfeit mark" "differ slightly in their terms, . . . they are identical in substance." Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12078 (daily ed. Oct. 10, 1984). Congress explained that the two definitions differ because, when they were being enacted, the Lanham Act already contained a definition of "counterfeit" that Congress sought to incorporate, whereas the federal criminal laws contained no definition of "counterfeit" with respect to trademarks, leading Congress to spell out the elements of "counterfeit" in title 18. See id.

10

goods"). Thus a counterfeit mark (a "spurious" mark, id.) is "fake" and "deceptively suggest[s] an erroneous origin." Fujifilm, 2019 WL 274967, at *3; see also Tiffany and Co., 971 F.3d at 95 n.18. The defendants' product, as it appears to consumers in the marketplace, does not use the term GREEK FREAK to communicate origin. Rather, the term indicates the flavor of a spice blend whose source is PALEO GRIND. Accordingly, the defendants' use of GREEK FREAK does not deceptively suggest an erroneous origin because it does not indicate origin at all. See id. This further undercuts the plaintiff's counterfeiting claim.[5]

## CONCLUSION

The plaintiff is not entitled to statutory damages under the Lanham Act because the defendants did not use a counterfeit mark within the meaning of 15 U.S.C. §§ 1116(d), 1117(c). The Court agrees with all of the conclusions in the Magistrate Judge's Report.

---

[5] That the defendants do not appear to have used GREEK FREAK as a mark does not, however, undercut the Magistrate Judge's finding of trademark infringement. See Tiffany and Co., 971 F.3d at 95 n.18 ("Terms not used as a mark may still generate confusion as to 'affiliation, connection, . . . association[,] . . . sponsorship or approval,' [15 U.S.C.] § 1125(a)(1)(A), and therefore constitute trademark infringement.").

The plaintiff's objections are **overruled**. The Clerk is directed to close all pending motions. The plaintiff is directed to submit a proposed judgment within five days. The defendants may respond three days thereafter.

**SO ORDERED.**

Dated:   New York, New York
         October 18, 2021

                                    _____
                                    John G. Koeltl
                                    **United States District Judge**